UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAY 1 1 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-276-GWU

JUDY ANN ROBERTS, PLAINTIFF,

VS: MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT,

## INTRODUCTION

Judy Roberts brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Roberts, a 41 year-old woman with a "limited" education and no past relevant work history, suffered from impairments related to a history of fibromyalgia, headaches, polysubstance abuse, depression, anxiety, and a somatization disorder. (Tr. 14, 22). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 25). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 25). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 24).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the current record does not mandate an immediate award of of SSI. Therefore, a remand of the action for further consideration is required.

The hypothetical question presented to Vocational Expert Anne Thomas

5

did not fairly characterize Roberts' physical condition, as required by Varley. The physical restrictions presented by the ALJ to Thomas included only a limitation to medium level work. (Tr. 52-54). However, Dr. James Ross, a non-examining medical reviewer, indicated that the plaintiff's ability to climb, stoop, and crawl would be limited to "occasional" performance. (Tr. 167). Dr. Parandhamulu Saranga, another medical reviewer, opined that the claimant would be unable to ever climb ladders, ropes or scaffolds and only occasionally able to climb ramps and stairs or stoop. (Tr. 175). These physical restrictions were not contradicted in the record by those of a treating or examining source, including Dr. John Vaughn (Tr. 122-123), the staff at Shands Jacksonville Hospital (Tr. 124-133), Dr. Mark Carter (Tr. 134-136), the staff at the Corbin Instant Care Clinic (Tr. 137-141), Dr. Azhar Aslam (Tr. 193-193g), the staff at Baptist Regional Medical Center (Tr. 194-202, 214-222), the staff at the London-Corbin Medical Clinic (Tr. 203-204), the staff at the East Bernstadt Medical Clinic (Tr. 205-207), Dr. Carpio-Carigaba (Tr. 208-211), the staff at the St. Vincent Medical Center (Tr. 223-240), Dr. Cary Twyman (Tr. 241-243), Dr. Walter Durham (Tr. 244-248), Dr. Amanda Zaide (Tr. 249-289), and Dr. Charles Day (Tr. 290-298). Social Security Ruling 85-15 indicates that a restriction concerning climbing in particular needs to be considered by a vocational expert when it is not the only limitation.[1] The ALJ should at least have sought the advice of a medical advisor before substituting his own lay opinion for those of the medical professionals. Therefore, a remand of the action is required.

Roberts also argues that the ALJ erred in evaluating her mental condition.

---

[1] The plaintiff was also found to suffer from such mental restrictions as a limitation to one or two step tasks in an object-focused setting requiring no contact with the public, no more than minimal social interactions with supervisors or co-workers, and no excessive production quotas. (Tr. 25).

Dr. Kevin Eggerman, an examining consultant, estimated that the plaintiff was of borderline intelligence (Tr. 154) while Psychologist Reba Moore, another examiner, performed intelligence testing revealing IQ scores consistent with mild mental retardation which the examiner diagnosed (Tr. 159-160, 162). According to the Interpreting IQ Test Scores: The Basics of IQ Score Interpretation, the IQ Online Home Page, a person of borderline intelligence or mild mental retardation is in the lowest 10 percent of the population in intellectual functioning. This factor was not presented to the vocational expert. (Tr. 52-54). The claimant noted that the Dictionary of Occupational Titles (DOT) indicates that several of the jobs cited by Thomas, including hand packager and small parts assembler could not be performed by a person whose intellectual functioning was in the lowest ten percent of the population. Thus, the DOT suggests that this is a very important factor which should have been presented to the vocational expert in order for the hypothetical question to fairly characterize Roberts' condition.[2] Therefore, upon remand, the ALJ should carefully consider this issue.

Roberts argues that the ALJ erred in concluding that she did not meet the requirements of Section 12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05(C). The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or

---

[2] Moore herself indicated that a "poor" ability to handle simple instructions would flow from the mental retardation. (Tr. 164).

7

supports onset of the impairment before age 22." 20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05. Thus, to satisfy the requirements of Section 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

In the present action, Moore's IQ testing revealed a Verbal IQ score of 62, a Performance IQ score of 63 and a Full Scale IQ score of 59, all within Listing range.[3] (Tr. 159). However, the examiner specifically indicated that these scores were an accurate estimate of her <u>current</u> level of functioning. (Tr. 159). Moore stated that she had no records of functioning with which to compare the test results and suggested that some regression from an earlier level of higher functioning may have occurred. (Tr. 159). As noted by the defendant, the plaintiff reported that she had not attended special education classes while in school. (Tr. 100). Therefore, the claimant failed to meet her burden of demonstrating that the required deficits in adaptive behavior had been manifested during the developmental period and, so, the Listing was not met.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the Court must grant the plaintiff's summary judgment motion in so far as such relief is achieved and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___11___ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[3] The Full Scale IQ score would place the plaintiff in range of 12.05(B) of the Listing of Impairments as well. However, she would fail to meet this section for the same reasons she does not meet 12.05(C).

8